17-TP-60036-Bloom

| PROB 22<br>(Rev. 5/2015) | | DOCKET NUMBER *(Tran. Court)* |
|---|---|---|
| **TRANSFER OF JURISDICTION** | | 0:10-CR-11-DLB-1 |
| | | DOCKET NUMBER *(Rec. Court)* |

| NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE | DISTRICT<br><br>Eastern District of Kentucky | DIVISION<br><br>*Northern* Division at Ashland |
|---|---|---|
| Keith M. Duran | NAME OF SENTENCING JUDGE<br><br>David L. Bunning, U.S. District Judge | |
| | DATES OF PROBATION/<br>SUPERVISED RELEASE | FROM<br><br>9/22/2017 | TO<br><br>3/21/2018 |

| OFFENSE |
|---|
| Conspiracy to Distribute Oxycodone |

| **PART 1 - ORDER TRANSFERRING JURISDICTION** |
|---|

| UNITED STATES DISTRICT COURT FOR THE | Eastern | DISTRICT OF | Kentucky |
|---|---|---|---|

IT IS HEREBY ORDERED that, pursuant to 18 U.S.C. 3605, the jurisdiction of the probationer or supervised releasee named above be transferred with the records of this Court to the United States District Court for the _____ Southern District of Florida _____ upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this court.*

_30 Nov. 17_
*Date*

_[signature]_
*United States District Judge*

*This sentence may be deleted in the discretion of the transferring Court.

| **PART 2 - ORDER ACCEPTING JURISDICTION** |
|---|

| UNITED STATES DISTRICT COURT FOR THE | Southern | DISTRICT OF | Florida |
|---|---|---|---|

IT IS HEREBY ORDERED that jurisdiction over the above-named probationer/supervised releasee be accepted and assumed by this Court from and after the entry of this order.

_Dec. 21, 2017_
*Effective Date*

_[signature]_
*United States District Judge*

United States Government
MEMORANDUM

**DATE:** December 19, 2017

**FROM:** Marisa R. Barwig
Senior United States Probation Officer
Hollywood, Florida
Office: (954) 769-5536

**SUBJECT:** **DURAN, Keith**
**SUPERVISED RELEASEE**
**SD/FL PACTS No.: 106112**

**TO:** The Honorable William P. Dimitrouleas
United States District Judge
Fort Lauderdale, Florida

## TRANSMITTAL

Enclosed is a matter from the United States Probation Office requesting a decision from Your Honor. The following is attached:

- Memorandum: Request for Transfer of Jurisdiction

- Probation Form 22 – Transfer of Jurisdiction

- Copy of the Judgment in a Criminal Case for Revocation of Supervised Release from the Eastern District of Kentucky

- Copy of the Judgment in a Criminal Case from the Eastern District of Kentucky

- Copy of the Presentence Investigation Report from the Eastern District of Kentucky

Date Mailed: <u>12/19/2017</u>
Clerk's initial: <u>dlm</u>

*Our Vision: 'To Be the National Benchmark for Quality in the United States for Probation Services'.*

**United States Government**
M E M O R A N D U M

**DATE:**       December 19, 2017

**FROM:**       Marisa R. Barwig
                Senior United States Probation Officer
                Hollywood, Florida
                Office: (954) 769-5536

**SUBJECT:**    **DURAN, Keith**
                **SUPERVISED RELEASEE**
                **SD/FL PACTS NO.: 106112**

**TO:**         The Honorable William P. Dimitrouleas
                United States District Judge
                Fort Lauderdale, Florida

<u>**REQUEST FOR TRANSFER OF JURISDICTION**</u>

         The above-named individual, was sentenced on April 11, 2011, by The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, to a term of seventy-two (72) months custody of the Bureau of Prisons, followed by three years of supervised release, after pleading guilty to Count One: Conspiracy to Distribute Oxycodone, in violation of 21 U.S.C § 846.

         Please find enclosed Probation Form 22, signed in Part One on November 30, 2017, by the Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky.

         Please sign Probation Form 22 in Part Two, Order Accepting Transfer of Jurisdiction.  If Your Honor should have any questions and/or require further assistance, please do not hesitate to contact this officer.

                                    Respectfully submitted,


MRB/dlm
Enclosure(s) as noted

AO 245D (Rev. 11/16)   Judgment in a Criminal Case for Revocations
Sheet 1

Eastern District of Kentucky
**FILED**

# UNITED STATES DISTRICT COURT

Eastern District of Kentucky – Northern Division at Ashland

JUL -5 2017

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA

v.

Keith M. Duran

**Judgment in a Criminal Case**

(For **Revocation** of Probation or Supervised Release)

Case No.    0:10-CR-11-DLB-1

USM No.    95718-004

Michael R. Campbell
Defendant's Attorney

**THE DEFENDANT:**

☒ admitted guilt to violation of condition(s)    2 & 3    of the term of supervision.

☐ was found in violation of condition(s)    _____    after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 2 | Unlawful use of controlled substances | 2/17/2017 |
| 3 | Violation of federal, state, or local law | 2/17/2017 |

The defendant is sentenced as provided in pages 2 through    5    of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☒ The defendant has not violated condition(s)    1    and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

Last Four Digits of  Defendant's  Soc. Sec.    5187

Defendant's Year of Birth:    1975

City and State of Defendant's Residence:
Plantation, Florida

June 30, 2017
Date of Imposition of Judgment

Signature of Judge

Honorable David L. Bunning, U.S. District Judge
Name and Title of Judge

July 4, 2017
Date

AO 245D (Rev. 11/16)   Judgment in a Criminal Case for Revocations
　　　　　　　　Sheet 2— Imprisonment

Judgment—Page ___2___ of ___5___

DEFENDANT:　　　Keith M. Duran
CASE NUMBER:　　0:10-CR-11-DLB-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :

## SIX (6) MONTHS AND ONE (1) DAY

☒　　The court makes the following recommendations to the Bureau of Prisons:
　　　Defendant's sentence, if possible, shall be served at a federal correctional facility and halfway house located near his home in the Southern District of Florida.

☒　　The defendant is remanded to the custody of the United States Marshal.

☐　　The defendant shall surrender to the United States Marshal for this district:

　　　☐　at _____　☐ a.m.　☐ p.m.　on _____ .

　　　☐　as notified by the United States Marshal.

☐　　The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

　　　☐　before 2 p.m. on _____ .

　　　☐　as notified by the United States Marshal.

　　　☐　as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
　　　DEPUTY UNITED STATES MARSHAL

AO 245D (Rev. 11/16)  Judgment in a Criminal Case for Revocations
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___5___

DEFENDANT:      Keith M. Duran
CASE NUMBER:    0:10-CR-11-DLB-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

### SIX (6) MONTHS Supervised Release to follow in a halfway house located near his home in the Southern District of Florida.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse.  *(Check, if applicable.)*
4.  ☒ You shall cooperate in the collection of DNA as directed by the probation officer.  *(Check, if applicable.)*
5.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) As directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense.  *(Check, if applicable.)*
6.  ☐ You must participate in an approved program for domestic violence.  *(Check, if applicable.)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page   4   of   5

DEFENDANT:      Keith M. Duran
CASE NUMBER:   0:10-CR-11-DLB-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature_____      Date _____

AO 245D (Rev. 11/16)  Judgment in a Criminal Case for Revocation
Sheet 3D – Supervised Release

| | Judgment—Page | 5 | of | 5 |

DEFENDANT:       Keith M. Duran
CASE NUMBER:    0:10-CR-11-DLB-1

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall participate in a substance abuse treatment program and shall submit to periodic drug and alcohol testing at the direction and discretion of the probation officer during the term of supervision.

2.  The defendant shall abstain from the use of alcohol.

3.  The defendant shall participate in a program of mental health treatment at the direction and discretion of the probation officer, unless it is determined that he is not in need of mental health treatment/counseling.

4.  Defendant shall provide to the USPO, within 7 (seven) days of release from the custody of the Bureau of Prisons, a written report, in a form the USPO directs, listing each and every prescription medication in Defendant's possession, custody or control.  The list shall include, but not be limited to, any prescription medication that contains a controlled substance and encompasses all current, past and outdated or expired prescription medications in a Defendant's possession, custody, or control at the time of the report.

5.  Defendant shall notify the USPO immediately (i.e. within no later than 72 hours) if Defendant receives any prescription for a medication containing a controlled substance during the period of supervised release.  Defendant shall provide the USPO such documentation and verification as the USPO may reasonably request and in a form the USPO directs.

6.  Defendant must comply strictly with the orders of any physician or other prescribing source with respect to use of all prescription medications.

7.  The defendant shall report any theft or destruction of his prescription medications to the U.S. Probation Officer within 72 hours of the theft or destruction.

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

**RECEIVED**
U.S. MARSHAL E7KY
2011 APR 14 PM 3 20

**Eastern District of Kentucky**
**FILED**

APR 1 2 2011

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

# UNITED STATES DISTRICT COURT

EASTERN _____ District of _____ KENTUCKY

UNITED STATES OF AMERICA
**v.**

KEITH M. DURAN

## JUDGMENT IN A CRIMINAL CASE

Case Number:  0:10-CR-11-DLB-1

USM Number: 95718-004

Matthew Warnock          Court reporter: Lisa Wiesman
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s)    1

☐ pleaded nolo contendere to count(s)   _____
which was accepted by the court.

☐ was found guilty on count(s)   _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:846 | Conspiracy to Distribute Oxycodone | 09/03/2010 | 1 |

    The defendant is sentenced as provided in pages 2 through    6    of this judgment.  The sentence is imposed pursuant to 18 U.S.C. §3553(a) and the Sentencing Reform Act of 1984 as amended or modified by the Supreme Court's January 12, 2005, decision in *United States v. Booker* and *United States v. Fanfan.*

☐ The defendant has been found not guilty on count(s)   _____

X Count(s)   2 & 6   _____   ☐ is   X are  dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

April 11, 2011
Date of Imposition of Judgment

_signature_
Signature of Judge

DAVID L. BUNNING, US DISTRICT JUDGE
Name and Title of Judge

April 12, 2011
Date

I certify that this is a true and correct copy
of the original filed in my office on:
4-12-2011
Leslie G. Whitmer, Clerk
By Kelly S. Smith
Deputy Clerk
Date: 4-12-2011

AO 245B    (Rev. 09/08) Judgment in Criminal Case
          Sheet 2 — Imprisonment

Judgment — Page ___2___ of ___6___

DEFENDANT:           KEITH M. DURAN
CASE NUMBER:         0:10-CR-11-DLB-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

### 72 MONTHS

X   The court makes the following recommendations to the Bureau of Prisons:
    The Court recommends the defendant participate in the 500-hour RDAP program, if found eligible.
    The Court recommends the defendant be designated at FCI Coleman, Coleman, Florida.
    The Court recommends the defendant undergo a mental health evaluation/assessment and treatment if deemed necessary.

X   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____ ☐ a.m.   ☐ p.m.   on _____

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ___5-31-20(1___ to _FCC Coleman Medium_

a _Coleman, FL_, with a certified copy of this judgment.

_Jorge L Pastrana, Warden_
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT:     KEITH M. DURAN
CASE NUMBER:   0:10-CR-11-DLB-1

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

## 3 YEARS

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901 et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. (Check, if applicable)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

Judgment—Page __4__ of __6__

DEFENDANT:       KEITH M. DURAN
CASE NUMBER:     0:10-CR-11-DLB-1

## SPECIAL CONDITIONS OF SUPERVISION

1) The defendant shall participate in a substance abuse treatment program and shall submit to periodic drug and alcohol testing at the direction and discretion of the probation officer during the term of supervision.

2) The defendant shall abstain from the use of alcohol.

3) The defendant shall participate in a mental health treatment program at the direction and discretion of the probation officer during the term of supervision, unless it is determined that he is not in need of mental health treatment/counseling.

4) Defendant shall provide to the USPO, within 7 (seven) days of release from the custody of the Bureau of Prisons, a written report, in a form the USPO directs, listing each and every prescription medication in Defendant's possession, custody, or control. The list shall include, but not be limited to, any prescription medication that contains a controlled substance and encompasses all current, past, and outdated or expired prescription medications in the Defendant's possession, custody, or control at the time of the report.

Defendant shall notify the USPO immediately (i.e., within no later than 72 hours) if Defendant receives any prescription for a medication containing a controlled substance during the period of supervised release. Defendant shall provide the USPO such documentation and verification as the USPO may reasonably request and in a form the USPO directs.

Defendant must comply strictly with the orders of any physician or other prescribing source with respect to use of all prescription medications.

Defendant shall report any theft or destruction of his/her prescription medications to the U.S. Probation Officer within 72 hours of the theft or destruction.

Pursuant to Public Law 108-405, Revised DNA Collection Requirements Under the Justice for All Act of 2004, the defendant shall submit to DNA collection if the offense of conviction is a felony.

### *ACKNOWLEDGMENT*

*Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.*

*These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.*


(Signed) _____          _____
         (Defendant)                                Date


_____                    _____
U. S. Probation Officer/Designated Witness          Date

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT:          KEITH M. DURAN
CASE NUMBER:        0:10-CR-11-DLB-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ WAIVED | $ NOT APPLICABLE |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ _____0 | $ _____0 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

   ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
           Sheet 6 — Schedule of Payments

Judgment — Page  6  of  6

DEFENDANT:      KEITH M. DURAN
CASE NUMBER:    0:10-CR-11-DLB-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A   X   Lump sum payment of $  100.00  due immediately, balance due

☐  not later than _____ , or
X  in accordance      ☐ C,   ☐ D,   ☐ E. or   X F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
        _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
        term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
        imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   X   Special instructions regarding the payment of criminal monetary penalties:

        Criminal monetary penalties are payable to:
        Clerk, U. S. District Court
        Eastern District of Kentucky
        336 Federal Building
        1405 Greenup Avenue
        Ashland, KY  41101
        PLEASE INCLUDE YOUR CASE DOCKET NUMBER.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

X   The defendant shall forfeit the defendant's interest in the following property to the United States:
    All items listed in the forfeiture allegation.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY

UNITED STATES OF AMERICA   )
                          )
      **vs.**          )     **PRESENTENCE INVESTIGATION REPORT**
                          )
KEITH M. DURAN         )     0:10-CR-11-1-DLB

---

**Prepared For:**    Honorable David L. Bunning
                     United States District Judge

**Prepared By:**     Alan L. Hammond
                  U.S. Probation Officer
                  P.O. Box 1780
                  Lexington, Kentucky 40588-1780
                  859-233-2646

**Assistant U.S. Attorney**               **Defense Counsel**
Ron L. Walker, Jr.                      Matthew Warnock
260 West Vine Street, Suite 300         P.O. Box 617
Lexington, Kentucky 40507              Greenup, Kentucky 41144
859-233-2661                         606-739-6774

**Sentence Date:**    April 11, 2011, at 10:30 a.m., in Ashland, Kentucky

**Offense:**      <u>Count One:</u>  Conspiracy to Distribute Oxycodone, 21 U.S.C. §§ 846 and
                          841(b)(1)(C)
                          *Statutory penalties of NMT 20 years imprisonment, a*
                          *$1,000,000 fine and NLT 3 years supervised release (Class*
                          *C Felony)*

**Release Status:**    Detained since arrest on October 20, 2011.

**Detainers:**        None.

**Co-defendants:**    See Page 3.

**Related Cases:**    None.

**Date Report Disclosed:** March 9, 2011         **Date Report Revised:** April 4, 2011

## Identifying Data:

| | |
|---|---|
| **Birth Name:** | Keith Marcel Duran ✓ |
| **Date of Birth:** | August 20, 1975 |
| **Age:** | 35 |
| **Race:** | White (Hispanic) |
| **Sex:** | Male |
| | |
| **SSN #:** | 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 ✓ |
| **FBI #:** | 828100RA9 ✓ |
| **USM #:** | 95718-004 |
| **Other ID #:** | Florida S.I.D.#: FL03223874 ✓ |
| **Other ID #:** | Kentucky S.I.D.#: KYA0671605 ✓ |
| | |
| **Education:** | Eighth grade (G.E.D., 1993) |
| **Dependents:** | Wife and two children |
| **Citizenship:** | United States |

**Legal Address:**

8100 Cleary Boulevard, #1005
Plantation, Florida 33324
(Defendant's residence)
954-240-3251 (Home)
606-315-0017 (Wife's cellular)

**Current Address:**

Pike County Detention Center
172 Division Street
Pikeville, Kentucky 41501
606-432-6292

**Aliases:**

Keith Marcello Duran ✓

*Restrictions on Use and Redisclosure of Presentence Report.*
Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (*i.e.*, classification, designation, programming, sentencing calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorists activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

**DURAN, Keith M.**                                                      **0:10-CR-11-1-DLB**

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1.  **Count(s) of Conviction:**   Count one charges that beginning on an unknown date and continuing through on or about September 3, 2010, in Boyd County, in the Eastern District of Kentucky, and elsewhere, **Keith M. Duran**, Stephen Bentley, Jerry Bentley, Christina M. Bentley, Roderick K. Burton, Chris Burton, and Michelle Gullett conspired together and with others, to knowingly and intentionally distribute a quantity of pills containing oxycodone, a Schedule II controlled substance, in violation of 21 § 841(a)(1); and to knowingly and intentionally possess with intent to distribute a quantity of pills containing oxycodone, a Schedule II controlled substance, all in violation of 21 U.S.C. § 846.

2.  **Count(s) to be Dismissed:**   The Government will move to dismiss Counts Two and Six of the Indictment, as they pertain to this defendant, at the time of sentencing.

3.  **Date of Conviction:**   On January 5, 2011, **Duran** appeared before the Honorable David L. Bunning, U.S. District Judge and entered a plea of guilty to Count One of the Indictment, pursuant to a written plea agreement.

4.  **Release Status:**   On November 18, 2010, pursuant to arrest, **Duran** initially appeared before the Honorable Edward B. Atkins, U.S. Magistrate Judge for purposes of arraignment. The defendant waived formal reading of the indictment and entered a plea of not guilty. Following a detention hearing held on November 22, 2010, the defendant was ordered detained. The Court remanded **Duran** to the custody of the U.S. Marshal pending further orders of the Court.

5.  **Co-defendants:**   **Stephen Bentley (2)** - On December 13, 2010, this defendant entered a plea of guilty to Count one of the Indictment. Sentencing is scheduled for April 11, 2011. **Jerry Bentley (3)** - On December 13, 2010, this defendant entered a guilty plea to Count one of the Indictment. Sentencing is scheduled for April 11, 2011. **Christina M. Bentley (4)** - On December 13, 2010, this defendant entered a guilty plea to Count One of the indictment. Sentencing is scheduled for April 11, 2011.

3

DURAN, Keith M.                                      0:10-CR-11-1-DLB

**Roderick K. Burton (5)** - On January 7, 2011, this defendant entered a guilty plea of guilty to Count one of the Indictment. Sentencing is scheduled for April 11, 2011. **Chris Burton (6)** - On January 7, 2011, this defendant entered a guilty plea to Count one of the Indictment. Sentencing is scheduled for April 11, 2011. **Michelle Gullett (7)** - On January 5, 2011, this defendant entered a guilty plea to Count three of the Indictment. Sentencing is scheduled for April 11, 2011.

### The Offense Conduct

6.     The Drug Enforcement Administration (DEA) and the Boyd County Sheriff's Offices were jointly involved in an ongoing investigation began as a result of information received that **Keith Duran** was a source of information for Oxycodone Trafficking from Ft. Lauderdale to individuals in Ashland, Kentucky, between November 2008 until early fall 2010. Throughout the investigation, law enforcement agents and detectives conducted numerous hours of surveillance and developed confidential informants. By utilizing these confidential informants, law enforcement officers were able to make controlled buys from Stephen Bentley and Jerry Bentley, in Ashland, Kentucky. Based upon the volume of discovery in this matter, the following information was taken from each of the defendants' written plea agreement and confirmed through documentation prepared by the DEA and other law enforcement personnel. It will be set forth in the order in which they appear on the indictment.

7.     **_Keith Duran:_** From about November 2008 through June 2009, **Keith Duran**, Stephen Bentley, Jerry Bentley, Roderick Burton, Christopher Burton, Michelle Gullett and others, agreed to distribute pills containing oxycodone in Boyd County, Kentucky.

8.     **Duran** introduced Steve and Jerry Bentley, Roderick Burton and others, to clinics in Florida where they could obtain pills containing oxycodone. **Duran** also facilitated the receipt of money from the Bentleys (Steve/Jerry) and mailed packages containing oxycodone pills to Steve Bentley on behalf of a third party. **Duran** also knew that the pills would be distributed in the Ashland and Boyd County areas.

9.     On June 19, 2009, law enforcement officers arrested Jerry Bentley and recovered a bag containing 692 (30mg) oxycodone pills, 524 (15 mg) oxycodone pills and 62 (mg unknown) oxycodone pills, and a quantity of Xanax pills; and, $9,000 in cash. The pills that officers recovered were provided to Jerry and/or Steve Bentley by **Duran**.

10.    On August 18, 2010, law enforcement officers conducted a search of the residence of Roderick Burton and recovered approximately 41 oxycodone pills. A portion of these pills was provided to Steve Bentley by **Duran**.

4

DURAN, Keith M.

**0:10-CR-11-1-DLB**

11. On September 3, 2010, law enforcement officers conducted a traffic stop of Christina Bentley and obtained consent to search her residence. **Duran** was inside the residence when agents/officers arrived to conduct the search of her residence. **Duran** possessed 75 (30mg) oxycodone pills, a pill bottle containing Alprazolam pills and a DVD recorder with 359 (30mg) oxycodone pills, and 210 (15mg) oxycodone pills.

12. **Duran** admits that the total number of oxycodone (30mg) pills involved is approximately 10,000 and the number of oxycodone (15mg) pills involved was approximately 7,000 pills.

13. *Stephen Bentley:* From some time in November 2008 to September 2010, Stephen Bentley, **Keith Duran**, Jerry Bentley, Roderick Burton, Christopher Burton, Michelle Gullet, and others, agreed to possess with the intent to distribute, as well as distribute, pills containing oxycodone, in Ashland, Kentucky.  During trips to Florida and Georgia, Stephen Bentley met or had others meet with **Keith Duran**, or others, to obtain pills containing oxycodone. Once purchased, the pills would be delivered to Stephen Bentley and others, to be distributed in Ashland, Kentucky.  In exchange for others driving the pills back to Kentucky, Stephen Bentley would provide the individual with a quantity of pills for their own personal use, and to sell to others.

14. On June 19, 2009, DEA agents and Boyd County Sheriff's Deputies arrested Jerry Bentley and recovered a bag containing 692 oxycodone, 30mg tablets; 524 oxycodone, 15mg pills; and, 62 oxycodone, (mg unknown) pills; a quantity of Xanax pills; and, $9,000 in cash. These tablets were provided to Jerry Bentley by his brother, Stephen Bentley, or acquired for Stephen Bentley.

15. On July 7, 2010, Stephen Bentley met with a DEA confidential informant (CI) who was equipt with a recording device and $300 in buy money. At approximately 6:00 p.m. the CI met Stephen Bentley at his business and purchased 8 oxycodone (30mg) pills for $240.00. Again, on July 20, 2010, Stephen Bentley met with the DEA CI (who was equipt with a recording device and buy money) and sold them 5 oxycodone pills to the CI for $150.00.

16. On August 18, 2010, DEA and Boyd County Sheriff's Deputies conducted a search of the residence of Roderick Burton. During the search, agents/deputies recovered approximately 41 oxycodone pills.  These pills were provided to Chris Burton by Stephen Bentley.

17. On September 3, 2010, DEA and Boyd County Sheriff's Deputies conducted a traffic stop of Christina Bentley's vehicle (Stephen Bentley's daughter).  Agents/Deputies conducted a consent search of Bentley's residence.  At the time of the search, agents/deputies found **Keith Duran** with 75 oxycodone (30mg) pills, a pill bottle containing Alprazolam pills and a DVD recorder with 359 oxycodone (30mg) pills; and, 210 oxycodone (15mg) pills.

DURAN, Keith M.                                                    0:10-CR-11-1-DLB

18.    Stephen Bentley agreed to be interviewed by DEA agents. Bentley stated that he began
       purchasing oxycodone from John Alvarez (Ft. Lauderdale) after introduction by Roderick
       Burton. Bentley further admitted that he utilized Tyrone Clemmons (Ft. Lauderdale) as a
       source of supply.  He stated that Clemmons was in Ashland in the fall of 2008 and had
       delivered a "load of pills" at that time.  Bentley also utilized Walter Adams who fronted
       pills to him via "Fed-Ex." Keith Duran was an underling of Adams and Duran took over
       some of his business. Bentley admitted that he purchased oxycodone from Duran and met
       him about 10 to 15 times. Bentley admitted that the total number of oxycodone (30mg) pills
       involved is approximately 10,000 and that the number of oxycodone (15mg) pills involved
       was 7,000 pills.  These amounts were also confirmed through medical records.

19.    *Jerry Bentley:* From about November 2008 through June 2009, Jerry Bentley, Stephen
       Bently, Keith Duran and others, agreed to distribute pills containing oxycodone in Ashland,
       Kentucky.

20.    During trips to Florida and Georgia, Jerry Bentley met with Keith Duran or visited pain
       clinics to obtain pills containing oxycodone.  Jerry Bentley would receive approximately
       1,500 (30mg and 15mg) pills per trip. Bentley sponsored (paid for expenses and
       prescriptions) and transported others to Florida and Georgia to obtain pills.  Upon their
       return to the Ashland, Kentucky area, he would deliver the pills to his brother, Stephen
       Bentley. In exchange, Stephen Bentley would provide Jerry Bentley with a quantity of pills
       to sell to others and also for his personal use.

21.    On or about June 19, 2009, Jerry Bentley was apprehended after agreeing to sell a quantity
       of oxycodone pills to a cooperating witness (CW).  Officers arrived at Bentley's residence
       in an attempt to make contact with him.  When officers arrived, they observed Bentley run
       to the rear of the residence with a red bag under his arm.  Officers went to the side door and
       were preparing to knock, when Bentley was in his truck, backing down the driveway. He
       was stopped by the officers and a conversation ensued about the sale of oxycodone to the
       CW.  Officers asked him about the red bag; however, he denied having it.  Bentley gave
       permission to search around and inside his home.  Officers located the red bag behind the
       apartment building stuffed in the weeds in a branch.  Upon finding the bag, officers found
       692 (30mg) oxycodone pills, 524 (15 mg) oxycodone pills and 62 (48/12) oxycodone pills,
       and a quantity of Xanax pills and ledgers.  In addition, approximately $9,000, later
       determined to be drug proceeds, was also seized from the bag hidden by Bentley.

22.    Bentley agreed to be interviewed by DEA agents.  Bentley advised that he began selling
       pills after developing a pill problem in late 2008.  His girlfriend, Molina Evans, also had a
       problem, but had a source of supply, independent from him.  He admitted that he had utilized
       Casey Maddix for a while, but began using his brother, Stephen Bentley, in early 2009,
       purchasing 5 to 6 pills per day, at a price of $20 to $35 per pill. Bentley stated that his
       brother used a source of supply in Tennessee known only as "Ty" and another one in St.
       Augustine, Florida.  On his first trip to Florida, Jerry Bentley met Keith Duran, where he

DURAN, Keith M.                                      0:10-CR-11-1-DLB

picked up approximately 1,200 oxycodone pills to return them to Ashland. Bentley agreed that the total number of oxycodone (30mg) pills involved was approximately 4,000 and the number of oxycodone (15mg) was approximately 1,500.

23.     *Christina M. Bentley:*   From about November 2008 through September 3, 2010, Christina M. Bentley, Chris Burton, Roderick Burton, Stephen Bentley, **Keith Duran** and others, agreed to possess with intent to distribute and did distribute pills containing oxycodone in Ashland, Kentucky.

24.     On September 3, 2010, law enforcement officers received information that she was driving a white Ford Focus with a supposed male subject. Information was that they were driving to a house to deliver a large quantity of oxycodone pills. Officers observed her vehicle and found that it contained no visible registration plate and conducted a traffic stop. Officers received consent from Christina Bentley to search her vehicle, at which time officers located a spoon with a handle that had been broken off. The spoon contained a blue powdery substance and a piece of suspected oxycodone pill on the handle. When asked where **Keith Duran "KD"** was, she advised he was at her residence. Christina Bentley agreed to a consent search of her residence. At the time of the search, agents/officers found **Keith Duran** and another individual, Gordon, Bentley's boyfriend, inside the residence. Officers requested to speak with **Duran**, at which time officers heard something rattle in his pocket. When asked what the noise was, **Duran** indicated his prescription medication. **Duran** handed the officer the pill bottles, marked with a prescription filled by a Florida Doctor, Christopher G. Wayne, MD, Coral Springs, Florida. Officers counted 75 (30mg) oxycodone pills and that the second pill bottle contained Alprazolam pills (2mg). The search of the residence further revealed a receipt with ledgers on the back; $2,615 in cash; and, a DVD recorder with 359 (30mg) oxycodone pills, and 210 (15mg) oxycodone pills.

25.     *Roderick Burton:* From approximately November 2008 through September 3, 2010, Roderick Burton, Chris Burton (Roderick's son), Stephen Bentley, Jerry Bentley, **Keith Duran** and others, agreed to possess with intent to distribute and did distribute pills containing oxycodone in Ashland, Kentucky.

26.     Burton introduced Stephen Bentley to Johnny Alverez, Tyrone Clemmons, Walter "Blaze" Adams, and others in Florida who were supplying large quantities of pills containing oxycodone. During the trips to Florida and Georgia, Roderick Burton met with **Keith Duran** or others, to obtain pills containing oxycodone. In addition, Roderick Burton had **Duran** or others in Florida or Georgia mailed pills containing oxycodone to him or others. The pills would be delivered to Steve Bentley or distributed by Roderick Burton upon his return to Ashland and Boyd County areas.

7

DURAN, Keith M.

27. Roderick Burton arranged or assisted others, including his son, Chris, Stephen Bentley and Jerry Bentley, to obtain rental vehicles to drive to Florida to obtain pills containing oxycodone. After the pills were acquired, they were transported back to the Ashland area for distribution. Roderick Burton was compensated with a portion of the pills and/or cash for his participation in this conspiracy.

28. On August 18, 2010, law enforcement officers conducted a traffic stop of Chris Burton and Michelle Gullett. Chris and Michelle consented to a search of the vehicle and their persons. Officers located a straw with a white powdery substance, as well as 68 oxycodone (15mg) pills contained in a pill bottle and $6,100 from Michelle's purse. Officers observed Gullett by a bush and later recovered a coin purse that contained 141 pills of oxycodone, a large number of the pills contained in the coin purse were 60mg pills and 27 Xanax pills. A consent search of her residence resulted in the recovery of approximately$6,460 in cash. The pills recovered during this search were part of the conspiracy to possess with intent to distribute.

29. Later that evening, law enforcement officers conducted a search of Roderick Burton's residence. During this search approximately 41 oxycodone pills were found that were obtained by Roderick Burton from his son. Chris.

30. The red oxycodone pills recovered by the Boyd County Sheriff's Office were part of a burglary of the Health Way Pharmacy in Ashland, Kentucky. A review of the pill inventory taken after the Burglary revealed that 1,528 (15mg), 1,527 (30mg), 456 (40mg), 423 (80mg), 164 (60mg), 208 (20mg); and, 200 (10mg) pills containing oxycodone; and, 1,395 (10mg), 319 (7.5mg), 500 (5mg) Endocet pills were stolen from the pharmacy.

31. Burton admits that the total number of oxycodone (30mg) pills involved was approximately 4,000 and the number of oxycodone (15mg) pills involved was approximately 1,500 pills.

32. *Chris Burton:* From approximately November 2008 through June 2009. Chris Burton, Roderick Burton (his father), Stephen Bentley, **Keith Duran** and others, agreed to distribute oxycodone pills in Ashland. Kentucky.

33. On August 18, 2010, Boyd County Sheriff's Deputies conducted a traffic stop of Chris Burton and Michelle Gullett. At the time of the stop, it appeared that the passenger (determined to be Chris Burton) was moving erratically inside the vehicle appearing to conceal something. Both Chris Burton and Gullett were very nervous upon contact with the officers, but consented to a search of the vehicle Gullett was driving, as well as a search of their persons. Agents/Officers located a straw with a white powdery substance and inside Gullett's purse was found approximately 68 (15mg) oxycodone pills. contained in a pill bottle, as well as $6,100 in cash. Gullett stood near a bush while officers conducted the search of the vehicle. After the search of the vehicle, agents/officers recovered a coin purse

8

that contained 141 pills containing oxycodone (to include 10, 20, 30, 40, 60 and 80 mg amounts). A portion of the pills were red. 60mg pills, along with 27 Xanax pills. Also found during the search of the vehicle was a green note book containing what appeared to be various types of drug information: names of people they had sold or transferred drugs to; how many pills they had taken/used for themselves; and a pill count.

34.   After questioning by officers, Burton admitted to trafficking in prescription medications stating he was selling drugs for Steve Bentley. Gullett stated she had no involvement and that all the pills and money belonged to her boyfriend, Chris Burton. Burton stated that Gullett was involved in trafficking (pills). Following interviews, they each gave consent to search their shared residence. The search revealed a safe containing $6,460. Gullett was charged with Failure or Improper Signal.

35.   The red oxycodone pills recovered by the sheriff's deputies were part of a Burglary of the Health Way Pharmacy in Ashland, Kentucky. A review of the pill inventory taken after the Burglary revealed that 1,528 (15mg), 1,527 (30mg), 456 (40mg), 423 (80mg), 164 (60mg), 208 (20mg); and. 200 (10mg) pills containing oxycodone: and. 1.395 (10mg), 319 (7.5mg), 500 (5mg) Endocet pills were stolen from the pharmacy.

36.   Later that evening, DEA/deputies conducted a search of the residence of Roderick Burton. Chris Burton's father. During this search, agents/officers recovered approximately 41oxycodone pills, some of those were also red in color and were 60mg pills, obtained from Chris Burton.

37.   *Michelle Gullett:* On August 18, 2010. law enforcement officers conducted a traffic stop of Gullett and Chris Burton. Gullett and Burton consented to a search of the vehicle and their persons.

38.   On August 18, 2010, Boyd County Sheriff's Deputies conducted a traffic stop of Burton and Michelle Gullett. At the time of the stop. it appeared that the passenger (determined to be Burton) was moving erratically inside the vehicle appearing to conceal something. Both Chris Burton and Michelle Gullett were very nervous upon contact with the officers, but consented to a search of the vehicle Gullett was driving. as well as a search of their persons. Agents/Officers located a straw with a white powdery substance and inside Gullett's purse was found approximately 68 (15mg) oxycodone pills, contained in a pill bottle, as well as $6,100 in cash. Michelle Gullett stood near a bush while officers conducted the search of the vehicle. After the search of the vehicle. agents/officers recovered a coin purse that contained 141 pills containing oxycodone (to include 10, 20, 30, 40, 60 and 80 mg amounts). A portion of the pills were red. 60mg pills. along with 27 Xanax pills. Also found during the search of the vehicle was a green note book containing what appeared to be various types of drug information; names of people they had sold or transferred drugs to: how many pills they had taken/used for themselves; and a pill count.

**DURAN, Keith M.**                                                    0:10-CR-11-1-DLB

39.  After questioning by officers, Burton admitted to trafficking in prescription medications stating he was selling drugs for Steve Bentley. Michelle Gullett stated she had no involvement and that all the pills and money belonged to her boyfriend, Chris Burton. Burton stated that Michelle Gullett was involved in trafficking (pills). Following interviews, they each gave consent to search their shared residence.  The search revealed a safe containing $6,460.  Gullett was charged with Failure or Improper Signal.

40.  Later this same date, law enforcement officers conducted a search of the residence of Roderick Burton, Chris Burton's father. During the search of Roderick Burton's residence, DEA agents found approximately 41 oxycodone pills. provided to him by his son, Chris Burton.

41.  During the time frame of this conspiracy, the defendants admitted to the distribution of the following amounts of Oxycodone, which will be used for purposes of relevant conduct. The oxycodone pills recovered were all submitted to the Kentucky State Police Laboratory for testing. Each of the pills submitted returned positive for oxycodone. a Schedule II controlled substance.

| _Name of Defendant_ | _Relevant Conduct Amount_ |
| --- | --- |
| **Keith Duran** | 10,000 (30mg), 7,000 (15mg) Oxycodone pills<br>Marijuana equivalency: 2,713.50 kilograms |
| Stephen Bentley | 10,000 (30mg), 7,000 (15mg) Oxycodone pills<br>Marijuana equivalency: 2,713.50 kilograms |
| Jerry Bentley | 4,000 (30mg), 1,500 (15mg) Oxycodone pills<br>Marijuana equivalency: 954.75 kilograms |
| Christina M. Bentley | 434 (30mg). 210 (15mg) Oxycodone pills<br>Marijuana equivalency: 108.339 kilograms |
| Roderick Burton | 4,000 (30mg). 1,500 (15mg) Oxycodone pills<br>Marijuana equivalency: 954.75 kilograms |
| Chris Burton | Number of various mgs Oxycodone pills<br>Marijuana equivalency: 958.10 kilograms |
| Michelle Gullett | Number of various mgs Oxycodone pills<br>Marijuana equivalency: 41.473 kilograms |

10

DURAN, Keith M. _____ 0:10-CR-11-1-DLB

### Victim Impact

42. While society, in general, is a victim to drug trafficking crimes, there is no method which could be used to identify specific victims or the loss they incurred as a result of this criminal activity. Therefore, no victims can be identified in this offense and restitution is neither appropriate nor practical as required by U.S.S.G. § 5E1.1 (d).

### Adjustment for Acceptance of Responsibility

43. Stephen Bentley admitted before the Court his responsibility for and participation in the instant offense. Based upon his statements to the Court, he has accepted responsibility for his criminal actions as defined in U.S.S.G. § 3E1.1(a) and (b). Consequently, his guidelines will be adjusted accordingly.

### Offense Level Computations

44. The 2010 edition of the Guidelines Manual has been used in this case. According to U.S.S.G. § 1B1.11, the guidelines manual in effect at the time of sentencing should be used, unless an earlier guidelines manual would be less onerous to the defendant. A comparison was conducted of both the 2008 and the 2010 U.S.S.G. guidelines manuals and it was determined that the 2010 Guidelines Manual would be used to calculate the guidelines in this matter.

### Count One - Conspiracy to Distribute Oxycodone, 21 U.S.C. § 846

45. **Base Offense Level:** The United States Sentencing Commission guideline for violation of 21 U.S.C. §846 and 841(a)(1) is found in U.S.S.G. §2D1.1. According to the Offense Conduct Section, this defendant's criminal activity was conspiracy to distribute 10,000 and 7,000 oxycodone (30 mg/15mg respectively) with a marijuana equivalency of 1,000 to 3,000 kilograms. The offense level specified in the **Drug Quantity Table** under U.S.S.G. §2D1.1(c)(4), sets a base offense level of 32.   <u>32</u>

46. **Specific Offense Characteristic:** None.   <u>0</u>

47. **Victim-Related Adjustments:** None.   <u>0</u>

48. **Adjustment for Role in the Offense:** None.   <u>0</u>

49. **Adjustment for Obstruction of Justice:** None.   <u>0</u>

50. **Adjusted Offense Level:**   <u>32</u>

11

**DURAN, Keith M.**                                                **0:10-CR-11-1-DLB**

51.    **Chapter 4 Enhancements:** None.                                  **0**

52.    **Adjustment for Acceptance of Responsibility:** Pursuant to U.S.S.G. §3E1.1(a),   **-3**
   because the defendant clearly demonstrates acceptance of responsibility and (b),
   timely provided complete information to the government concerning his own
   involvement in the offense, the offense is reduced three levels.

53.    **Total Offense Level:**                                           **29**

## PART B. DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudications

54.    None.

### Adult Criminal Convictions

55.    Florida Rule of Criminal Procedure 3.111 mandates that an indigent defendant who is
   charged in any criminal action shall be provided with counsel unless he or she elects to
   proceed without representation.

| | Date of Arrest/ Arraign | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pnt |
|---|---|---|---|---|---|
| 56. | 09/07/1992 (Age 16) | Cts. 1 and 2: Burglary of a Dwelling Broward County Circuit Court, Fort Lauderdale, Florida Dkt. #92-016663CF10A | 11/13/1992 Cts. 1 and 2: 4 years imprisonment as a youthful offender, 68 days credit for time served, concurrent with each other and 92-017022CF10A and 92-17444CF10A  01/10/1994 Released from Florida Department of Corrections custody | 4A1.1(a) | 3 |

The defendant was represented by counsel. According to records, on August 5, 1992, the
defendant unlawfully entered a residence through the rear door. Once inside, he removed
several items, to include jewelry, compact discs and cash. On the same date, he unlawfully

**DURAN, Keith M.**                                                              **0:10-CR-11-1-DLB**

entered another residence and removed jewelry and credit cards. The total value of items taken from both residences was set at $875.00.

Pursuant to the provisions of U.S.S.G. §4A1.2, Broward County Circuit Court docket numbers 92-016663CF10A, 92-017022CF10A and 92-17444CF10A are counted as a single sentence, as there was no intervening arrest and the sentences were imposed on the same date. Additionally, the conduct in each case predated the initial arrest.

Although the defendant's date of conviction falls outside the applicable 15-year time period for receiving criminal history points, pursuant to U.S.S.G. §4A1.2(e)(1), the custodial release date causes this to be a countable offense.

| 57. | 09/10/1992 (Age 16) | Cts. 1, 3 and 5: Burglary (Conveyance) Cts. 2, 4 and 6: Grand Theft, 3rd Degree Broward County Circuit Court, Fort Lauderdale, Florida Dkt. #92-017022CF10A | 11/13/1992 Cts. 1-6: Four years imprisonment as a youthful offender, 68 days credit for time served, each count concurrent and concurrent with 92-017444CF10A and 92-166630CF10A

01/10/1994 Released from Florida Department of Corrections custody | 4A1.2(a)(2) | 0 |

The defendant was represented by counsel in this case. According to court records, on May 15, 1992, the defendant entered a 1981 Honda Accord, from which he removed a stereo/CD player valued at $600 and $30 in currency, a 1986 Ford van, from which he removed a color television valued at $450, and a 1984 Toyota truck, from which he removed tools valued at $596.99.

Pursuant to the provisions of U.S.S.G. §4A1.2, Broward County Circuit Court docket numbers 92-016663CF10A, 92-017022CF10A and 92-17444CF10A are counted as a single sentence, as there was no intervening arrest and the sentences were imposed on the same date. Additionally, the conduct in each case predated the initial arrest.

The defendant's date of conviction falls outside the applicable 15-year time period for receiving criminal history points. Pursuant to U.S.S.G. §4A1.2(e)(1), however, had this offense been deemed a separate sentence, the custodial release date would have caused it to be a countable offense.

13

**DURAN, Keith M.**                                                    **0:10-CR-11-1-DLB**

| 58. | 09/16/1992 (Age 16) | Ct. 1: Burglary Ct. 2: Possession of Cannabis Broward County Circuit Court, Fort Lauderdale, Florida Dkt. #92-017444CF10A | 11/13/1992 Ct. 1: Four years imprisonment as a youthful offender, 68 days credit for time served Ct. 2: 68 days, with 68 days credit for time served, both counts to be served concurrently and concurrent with 92-017022CF10A and 92-016663CF10A  01/10/1994 Released from Florida Department of Corrections custody | 4A1.1(a) | 0 |

The defendant was represented by counsel. According to court records, on June 30, 1992, the defendant and two co-defendants entered the dwelling located at 2320 Elm Court, Pembroke Pines, Florida, without the consent of the owner. The defendants entered by shaking a pin loose from the rear door. As reflected in the police report, once inside, they began "partying and smoking a large amount of marijuana which they had stole earlier in the week."

Pursuant to the provisions of U.S.S.G. §4A1.2, Broward County Circuit Court docket numbers 92-016663CF10A, 92-017022CF10A and 92-17444CF10A are counted as a single sentence, as there was no intervening arrest and the sentences were imposed on the same date. Additionally, the conduct in each case predated the initial arrest.

The defendant's date of conviction falls outside the applicable 15-year time period for receiving criminal history points. Pursuant to U.S.S.G. §4A1.2(e)(1), however, had this offense been deemed a separate sentence, the custodial release date would have caused it to be a countable offense.

**DURAN, Keith M.**                                                      <u>0:10-CR-11-1-DLB</u>

| | | | | | |
|---|---|---|---|---|---|
| 59. | 02/27/1994 (Age 18) | Ct. 1: Possession of Alcohol, Under 21 Ct. 2: Theft to Appropriate Broward County Court, Fort Lauderdale, Florida Dkt. #94-003889MM10A | 12/27/1994 Cts. 1 and 2: 138 days jail, credit for time served ✓ | 4A1.2(e)(3) | 0 |

The defendant was represented by counsel. Records relating to the defendant's conduct in this case have not yet been located. The probation office is continuing to pursue additional records.

| | | | | | |
|---|---|---|---|---|---|
| 60. | 08/13/1994 (Age 18) | Ct. 1: Burglary Ct. 2: Theft Broward County Circuit Court, Fort Lauderdale, Florida Dkt. #94-013544CF10A | 12/06/1994 Ct. 1: 5 years imprisonment, 117 days credit for time served Ct. 2: 60 days jail, with credit for time served ✓✓  04/08/1999 Released from Florida Department of Corrections custody | 4A1.1(a) | 3 |

The defendant was represented by counsel. Records relating to the defendant's conduct in this case have not yet been located. The probation office is continuing to pursue additional records.

| | | | | | |
|---|---|---|---|---|---|
| 61. | 08/13/1994 (Age 18) | Possession of a Stolen Credit Card Broward County Circuit Court, Fort Lauderdale, Florida Dkt. #94-015196CF10A | 12/06/1994 60 days jail, with credit for time served ✓ | 4A1.2(a)(2) | 0 |

The defendant was represented by counsel. An additional charge of Grand Theft, 3rd Degree, was dismissed. According to records. on June 27, 1994, the defendant entered the Office Depot in Davie, Florida and attempted to purchase a Toshiba laptop computer, having a value of $2,299.00, with a stolen Master Card. When asked for identification to prove the card belonged to him, Duran stated he did not have identification with him. He added that he would go to his car and retrieve his identification. While he was outside, the store

**DURAN, Keith M.**                                                0:10-CR-11-1-DLB

manager confirmed with the card issuer that it had been reported stolen. When the defendant returned, he advised he would come back later with identification and asked the manager to return the card. The manager refused and when Duran left the store the manager contacted the local police. The defendant later allegedly called and threatened the manager after having driven by the store and seeing police present.

Pursuant to U.S.S.G. §4A1.2(a), this case is not counted separately from the previous entry (Dkt. #94-013544CF10A) due to the absence of an intervening arrest and both cases having the same sentencing date. Additionally, though it is not a prerequisite, this case was originally charged as part of the previous case.

| | | | | | |
|---|---|---|---|---|---|
| 62. | 08/13/1994 (Age 18) | Possess or Display of Suspended, Revoked or Fraudulent Driver's License Broward County Court, Fort Lauderdale, Florida Dkt. #94-039212TC30A | 12·13·1994 126 days jail, with credit for time served ✓ | 4A1.2(e)(3) | 0 |

Attorney representation in this case is not known. Records detailing the defendant's conduct in this case are not available due to records having been destroyed.

| | | | | | |
|---|---|---|---|---|---|
| 63. | 08/13/1994 (Age 18) | Ct. 1: Burglary Ct. 2: Grand Theft, 3rd Degree Broward County Circuit Court, Fort Lauderdale, Florida Dkt. #94-014352CF10A | 12/06/1994 Cts. 1 and 2: 5 years imprisonment, 117 days credit for time served, concurrent with each other and any sentence being served ✓ | 4A1.2(a)(2) | 0 |
| | | | 04/08/1999 Released from Florida Department of Corrections custody | | |

Attorney representation in this case is not known. Records relating to the defendant's conduct in this case have not yet been located. The probation office is continuing to pursue additional records.

Pursuant to U.S.S.G. §4A1.2(a), this case is not counted separately from Dkt. #94-013544CF10A, due to the absence of an intervening arrest and both cases having the same sentencing date.

**DURAN, Keith M.** _____ 0:10-CR-11-1-DLB

| | | | | | | |
|---|---|---|---|---|---|---|
| 64. | 08/20/1994 (Age 18) | Ct. 1: Burglary Ct. 2: Theft Broward County Circuit Court, Fort Lauderdale, Florida Dkt. #94-015119CF10A | 12/06/1994 Ct. 1: 5 years imprisonment with 117 days credit for time served, concurrent with any other sentence Ct. 2: 60 days imprisonment with credit for time served, concurrent to any other sentence | 4A1.2(a)(2) | 0 | |

The defendant was represented by counsel. Records relating to the defendant's conduct in this case have not yet been located. The probation office is continuing to pursue additional records.

Pursuant to the provisions of U.S.S.G. §4A1.2, Broward County Circuit Court docket numbers 94-015119CF10A and 94-016794CF10A are counted as a single sentence, as there does not appear to have been an intervening arrest and the sentences were imposed on the same date.

| | | | | | | |
|---|---|---|---|---|---|---|
| 65. | 09/29/1994 (Age 19) | Cts. 1 and 2: Dealing in Stolen Property Ct. 3: Grand Theft, 3rd Degree Broward County Circuit Court, Fort Lauderdale, Florida Dkt. #94-016794CF10A | 12/06/1994 Cts. 1 and 2: 6 years imprisonment, with 117 days credit for time served, followed by two years probation Ct. 3: 5 years imprisonment, with 117 days credit for time served, concurrent with any other sentence | 4A1.2(a)(2) | 0 | |

The defendant was represented by counsel. Records relating to the defendant's conduct in this case have not yet been located. The probation office is continuing to pursue additional records.

**DURAN, Keith M.**                                         **0:10-CR-11-1-DLB**

Pursuant to the provisions of U.S.S.G. §4A1.2, Broward County Circuit Court docket numbers 94-015119CF10A and 94-016794CF10A are counted as a single sentence, as there does not appear to have been an intervening arrest and the sentences were imposed on the same date.

| | | | | | |
|---|---|---|---|---|---|
| 66. | 04/08/1999<br>(Age 23) | Escape from Extended Limits of Confinement<br>Broward County Circuit Court, Fort Lauderdale, Florida<br>Dkt. #99-007368CF10A | 05/18/2000<br>10 years imprisonment, suspended, one year community control, followed by four years probation, concurrent to 00-00165CF10A, but consecutive to 94-016794FC10A | 4A1.1(c) | 1 |

The defendant was represented by counsel in this case. According to records, on April 8, 1999, Duran escaped from the custody of the Hollywood Community Correctional Center, a facility of the Florida Department of Corrections. He signed out of the center with permission for his job at Mama Mia Restaurant in Davie, Florida. He did not return as scheduled at 11:30 p.m. He was arrested at 11:38 p.m. on the same date.

| | | | | | |
|---|---|---|---|---|---|
| 67. | 01/31/2000<br>(Age 24) | Ct. 1: Grand Theft, 3rd Degree<br>Ct. 2: Fraudulent Use of Credit Card<br>Broward County Circuit Court, Fort Lauderdale, Florida<br>Dkt. #00-001165CF10A | 05/18/2000<br>Cts. 1 and 2: 1 year community control, four years probation, concurrent with one another and 99-007368CF10A, consecutive to 94-016794CF10A<br><br>05/23/2007<br>Violation of probation dismissed, probation terminated | 4A1.1(c) | 1 |

The defendant was represented by counsel. According to records, on October 25, 1999, the defendant attempted to purchase a ring valued at $500 using a stolen credit card.

18

DURAN, Keith M.                                          0:10-CR-11-1-DLB

| | | | | | |
|---|---|---|---|---|---|
| 68. | 07/25/2002 (Age 26) | Ct. 1: Possession of a Controlled Substance Ct. 2: Possession of a Controlled Substance with Intent to Sell or Deliver Miami-Dade Circuit Court, Miami, Florida Dkt. #F02-21954B | 03/27/2003 Adjudication withheld with suspended entry sentence to run concurrent on both counts, 1 year community control, 2 years probation, $471 costs | 4A1.1(c) and 4A1.2(a)(3) ✓ | 1 |

The defendant was represented by counsel. According to records, during an ongoing narcotics investigation, officers with the Miami Beach, Florida, police department observed the defendant and two co-defendants involved in a transaction involving 90 Ecstacy tablets. Officers observed one of the co-defendants pass a bag containing the tablets to Duran. The defendant then tried to conceal the bag under a floor mat in the vehicle in which he was a passenger.

Both counts of conviction in this case are 2nd Degree Felony offenses. Under Florida law, the maximum sentence for such a conviction is 15 years.

| | | | | | |
|---|---|---|---|---|---|
| 69. | 09/10/2005 (Age 30) | Driver's License Suspended Broward County Court, Fort Lauderdale, Florida 08-023208TC10A | 09/11/2008 2 days jail, 2 days credit for time served | 4A1.2(c)(1) ✓ | 0 |

70.    In addition to the criminal convictions set forth above, the defendant has two convictions involving minor traffic infractions. Such convictions never receive criminal history points, pursuant to U.S.S.G. §4A1.2(c)(2).

## Criminal History Computation

71.    The total of the criminal history points is eight (8). According to the sentencing table at U.S.S.G. Chapter 5, Part A, eight (8) criminal history points establish a criminal history category of IV.

**DURAN, Keith M.**                                                                                       **0:10-CR-11-1-DLB**

### Other Arrests

| | Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|---|
| 72. | 09/10/2005 (Age 30) | Ct. 1: Possession of Cocaine<br>Ct. 2: Possession of Cannibis, 20 Grams or Less<br>Ct. 3: Expired Tags | Broward County Circuit Court, Fort Lauderdale, Florida<br>Dkt. #05-015126CF10A | 01/26/2006 Cts. 1-3: Nolle prosequi ✓ |
| 73. | 03/22/2007 (Age 31) | Possession of Cocaine | Broward County Circuit Court, Fort Lauderdale, Florida<br>Dkt. #07-005398CF10A | 04/24/2007 Decline case ✓ |

## PART C.  OFFENDER CHARACTERISTICS

*The information contained in this section has been verified through contacts with Erica Duran, the defendant's wife.*

### Personal and Family Data

74.   Keith Marcello Duran was born in Miami, Florida, on August 20, 1975, to the marital union of Jose and Gayle (nee Lester) Duran. The defendant's father died in 1979, at age 24, after suffering injuries sustained in a work-related accident. His mother, now age 61, resides in Boca Raton, Florida. She remarried approximately 15 years ago. She lives with her husband, William Dietrich. Gayle Dietrich has been employed in the sales industry, but she is now recovering from a recent surgery and she is unemployed.  William Dietrich is a self-employed home remodeler. The defendant has two siblings. His brother, Brian Duran, age 40, is an attorney residing in Boca Raton. His twin sister, Michelle Duran, age 35, is a dental assistant residing in Oakland Park, Florida.

75.   Following the death of Jose Duran, the defendant's mother received a settlement from her husband's employer, due to his work-related death, of $100,000 per child. She was able to refrain from using the money, except for one period of treatment for behavioral problems the defendant was experiencing, until the children were at least 18 years-old. Gayle Duran was able to provide a nurturing home for her children and meet all of their needs.

76.   On May 6, 2007, the defendant married Erica Sciulli in Las Vegas, Nevada. The marriage remains intact and has produced one child, Christian Duran, age 20 months. The child resides with his mother and does not suffer from any physical or emotional problems. Duran has one child from a previous relationship with Rachel Ashe. The child, Angelica Duran, age seven, resides with her mother in Tennessee. He hasn't seen his daughter in approximately 18 months. Prior to his incarceration, he was reportedly attempting to secure visitation rights. He has no contact with Rachel Ashe.

77.   Duran has a strong relationship with all family members. As he stated, his family is disappointed with him, but he has a good family on which to rely. According to the defendant, and confirmed by his wife, his marriage is strong, despite his legal troubles. Following any sentence imposed in this case, he plans to return to his family in Florida and resume work in the timeshare sales field.

### Physical Condition

78.   Keith Marcello Duran, age 35, is a white male of Hispanic descent. He is 5'9" tall and weighs 165 pounds. He has green eyes and brown hair. Duran has a tattooed representation of a panther on his left arm and a sacred heart on his left leg.

79.   The defendant is generally healthy. He has no known history of physical health problems. He was recently attacked by another inmate while detained at the Carter County Detention Center for reasons unknown by him. He sustained minor injuries during the attack. After spending approximately two weeks in a special housing unit, he was transferred to the Pike County Detention Center in Pikeville, Kentucky.

### Mental and Emotional Health

80.   Duran advised that he has often suffered from anxiety and panic attacks as an adult. In the past, the conditions were controlled with medication. He is not presently receiving treatment for the conditions.

81.   As a child, he exhibited behavioral problems. At age 13, his mother placed him in the Straight Program in Orlando, Florida. According to the defendant, the program was a neglectful and abusive place. Duran stated that children housed in the program were not allowed to communicate or have physical contact with parents and parents were only allowed to say prescribed messages during brief visits. He was in the program for approximately 13 months. The program was reportedly closed at some point. It could not be located for verification purposes.

82.   Duran denies having any present thoughts of harming himself or others. Likewise, he denies a history of such thinking.

21

DURAN, Keith M.                                                    0:10-CR-11-1-DLB

### Substance Abuse

83.   The defendant's first experience with controlled substances came at age 13, when he used marijuana. He used the substance regularly thereafter, until becoming addicted to benzodiazepines and Oxycontin. He stated the latter substance has caused him the most problems and the most heavy addiction. He advised that prior to his arrest in this case he was consuming 15 to 20 Oxycontin 30mg tablets per day. To his credit, the defendant realizes his need for intensive substance abuse treatment.

### Education and Vocational Skills

84.   Duran left school while attending the ninth grade at Cooper City High School in Cooper City, Florida, due to behavioral issues. In 1993, while incarcerated in Broward County, Florida, he received a G.E.D. He has received no further formal education.

### Employment Record

85.   From 2006 until his arrest in this case, the defendant was employed by Global Timeshare Solutions, of Fort Lauderdale, Florida, as a sales manager. In that position, he reportedly earned a salary of $45,000 per year. The company could not be reached for confirmation of employment, but the employment was verified by Erica Duran.

86.   During 2005, Duran was employed as a sales manager for IBD Marketing, a timeshare sales business in Pompano Beach, Florida. In that position, he earned a salary of $45,000 per year prior to taking the position with Global Timeshare Solutions.

87.   During 2004 and 2005, the defendant was a sales manager for WHK Property Management Company in Oakland Park, Florida. In that position, he earned $75,000 per year.

88.   From 2001 to 2004, Duran was a timeshare salesman for Ramada Plaza Resorts in Pompano Beach.

89.   While on a work-release program as part of a criminal sentence, the defendant was employed by Mama Mia's Restaurant in Davie, Florida. His employment ended after he failed to return to confinement at the specified time and was taken into custody.

### Financial Condition: Ability to Pay

90.   The defendant's assets are limited to a 2006 Lexus GS300 automobile, with an approximate value of $20,000. He owes $10,000 on the vehicle loan. As for monthly expenses, the defendant pays $1,250 in rent, $800 for his auto loan payment, and $200 in child support. At present, his wife receives financial support from family members.

DURAN, Keith M.                                                    0:10-CR-11-1-DLB

91.   Based upon his present financial condition, the defendant does not appear to have the ability to pay a fine.

## PART D.  SENTENCING OPTIONS

### Custody

92.   **Statutory Provisions:** The maximum term of imprisonment is 20 years, pursuant to 21 U.S.C. § 841(b)(1)(C).

93.   **Guideline Provisions:** Based on a total offense level of 29 and a criminal history category of IVI, the guideline range for imprisonment is 121 to 151 months.

### Impact of Plea Agreement

94.   The plea agreement has had no impact on the determination of the guideline range.

### Supervised Release

95.   **Statutory Provisions:** A term of at least three years supervised release is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. § 841(b)(1)(C).

96.   **Guideline Provisions:** The guideline range for a term of supervised release is at least two years but not more than three years or the minimum required by statute, whichever is greater, pursuant to U.S.S.G. §5D1.2(a)(2) and (c).

### Probation

97.   **Statutory Provisions:** The defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. § 841(b)(1)(C).

98.   **Guideline Provisions:** The defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to U.S.S.G. §5B1.1(b)(2).

### Fines

99.   **Statutory Provisions:** The maximum fine is $1,000,000, pursuant to 21 U.S.C. § 841(b)(1)(C).  A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

100.  **Guideline Provisions:** The fine range for the instant offense is from $15,000 to $150,000, pursuant to U.S.S.G. §5E1.2(c)(3).

DURAN, Keith M.

101.  Subject to the defendant's ability to pay, the Court shall impose a fine in every case, pursuant to U.S.S.G. §5E1.2(a).  In determining the amount of the fine, the Court shall consider, *inter alia*, the expected costs to the government for any term of imprisonment, supervised release, or probation, pursuant to U.S.S.G. §5E1.2(d)(7).  The most recent advisory from the Administrative Office of the United States Courts, dated April 27, 2010, suggests a monthly cost of $2,270.93 for imprisonment, $2,063.19 for community confinement, and $317.32 for supervised release or probation.  If the Court imposes home confinement with location monitoring, the defendant could be assessed the cost of $3.18 per day. If the defendant is unable to pay or if imposition of a fine would unduly burden the defendant's dependents, the Court may waive the fine and impose an alternative sanction such as community service, pursuant to U.S.S.G. §5E1.2(e).

### Restitution

102.  **Statutory Provisions:** Restitution is not an issue.

103.  **Guideline Provisions:** Restitution is not an issue.

### Denial of Federal Benefits

104.  **Statutory Provisions:** Pursuant to 21 U.S.C. § 862(a)(1)(B) upon a second conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all federal benefits for up to ten years as determined by the Court.

105.  **Guideline Provisions:** Pursuant to U.S.S.G. §5F1.6, the Court may deny eligibility for certain federal benefits of any individual convicted of distribution or possession of a controlled substance.

Subsection(e) of 21 U.S.C. § 862 provides that a period of benefit ineligibility "shall not apply to any individual who cooperates or testifies with the government in the prosecution of a federal or state offense or who is in a government witness protection program."

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

106.  The probation officer is aware of no factors, either mitigating or aggravating, which would justify a departure from the guideline range.

## PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

107.  The probation office has not identified any factors under 18 U.S.C. § 3553(a) that may warrant a sentence outside of the advisory guideline system.

**DURAN, Keith M.**                                      **0:10-CR-11-1-DLB**

Respectfully submitted,

Alan L. Hammond
U.S. Probation Officer

Reviewed & Approved by:

Thomas E. Mattingly, Jr.
Supervisory U.S. Probation Officer

25